**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        jglatt@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER FAHEY, on behalf of herself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>        vs.<br><br>EOS PRODUCTS, LLC,<br><br>                                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Jennifer Fahey ("Plaintiff") brings this action on behalf of herself and all others similarly situated against eos Products, LLC. ("Defendant").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings claims on behalf of herself and others similarly situated who purchased Defendant's eos lip balms advertised as being "100% Natural" (the "Products," including all substantially similar flavors and varieties).

2.      Defendant prominently represents that the Products are made of "100% Natural" and/or "100% Natural & Organic" ingredients.  Defendant sells multiple similar iterations of its "100% Natural" lip balm products.

3.      These representations together signal to reasonable consumers, like Plaintiff, that the Products are comprised entirely of natural ingredients.  They are not.  Instead, and unbeknownst to Plaintiff, the Products are made with *stevia rebaudiana* leaf/stem extract (referred to herein as "stevia leaf extract") and anisyl alcohol, highly processed, synthetic, and otherwise unnatural ingredients.  Thus, the Products are not "100% Natural" nor made with only natural ingredients.

4.      Accordingly, Plaintiff brings claims against Defendant for violations of (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (3) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; and (4) Breach of Express Warranty.

## PARTIES

5.      Plaintiff Jennifer Fahey is a citizen of California and a resident of San Francisco, California.  Plaintiff purchased Defendant's eos 100% Natural Lip Balm Product from a brick-and-mortar Walgreens store in San Francisco within the last six months and has purchased them regularly.  Prior to making her purchase, Plaintiff viewed and relied on Defendant's 100% Natural

representation and warranty and so reasonably believed that the Product was compromised of only natural ingredients. Plaintiff saw these representations and warranties at the time of her purchase and reasonably relied on them in deciding to purchase the Product. Accordingly, these representations and warranties were part of the basis of the bargain in that Plaintiff would not have purchased her Product on the same terms had she known that these representations and warranties were untrue. In making her purchase, Plaintiff paid a price-premium due to Defendant's false and misleading claims regarding the Product's purported ingredient composition. Plaintiff, however, did not receive the benefit of the bargain because the Product did not, in fact, contain exclusively 100% natural ingredients because it contained stevia leaf extract, a highly processed ingredient. Had Plaintiff known that Defendant's representations and warranties about the Product were false and misleading, Plaintiff would not have purchased the Product or would have paid substantially less for it.

6. Plaintiff remains interested in purchasing the Products from Defendant in the future. However, unless and until she can determine if the Product is accurately labeled, she will be unable to rely on the truth of Defendant's labeling. So long as the Product is labeled as being comprised of only and entirely natural ingredients—when it contains highly processed stevia leaf extract—Plaintiff will be unable to make informed decisions about whether to purchase the Product in the future and will be unable to evaluate the different prices between Defendant's Products and competitors' products. Plaintiff will likewise be unable to rely on Defendant's marketing and representations going forward. Moreover, she is likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its Products actually conform to Defendant's representation that the Product is comprised of only natural ingredients.

7. Defendant eos Products, LLC. is a New York company with its principal place of business in New York, NY. Defendant manufactures, markets, and sells its Products through California and the United States.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs and at least one member of the proposed Classes is a citizen of state different from Defendant.

9.      This Court has personal jurisdiction over Defendant because Defendant purposefully avails itself to the benefits of this forum by selling its Products to consumers, including Plaintiff, in this forum.  Defendant derives substantial revenue from the sale of its Products in this State, with knowledge that its Products are being marketed and sold for use in this State.

10.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims took place within this District.

**FACTUAL ALLEGATIONS**

**I.      DEFENDANT'S "100% NATURAL" PRODUCTS**

11.      Defendant sells its Products in single and variety packs.  Both iterations make the same false and misleading "100% Natural" representations despite containing stevia leaf extract.

12.      Defendant manufactures and sells these lip balm products as being made with 100% Natural ingredients.  The version Plaintiff purchased (pictured below) shows the "100% Natural" representation prominently on the front packaging.



13.     The Products are sold online and in brick-and-mortar stores throughout California and the United States.

14.     Contrary to Defendant's express front-label representations, the Products are not comprised of entirely natural ingredients.  The ingredient panel on the back discloses, in small print and contrary to Defendant's front-label representations, that the Products contain stevia leaf extract and anisyl alcohol, synthetic ingredients commonly used for fragrance and flavor purposes.



15.     The version Plaintiff purchased is substantially similar to Defendant's line of "100% Natural" -branded Products.  This includes, but is not limited to, Defendant's Strawberry Sorbet flavor, Natural Shea, Watermelon Frosé & Lychee Martini flavor, Pomegranate Raspberry Flavor,

Coconut Milk Sphere, Sweet Mint Sphere, Fruity variety pack, Strawberry Sorbet Sphere, and Classic Varity pack.  Some examples are reproduced below.  Each substantially similar version is sold with the same eye-catching design and makes the same misleading representation that its ingredients are 100% natural despite containing anisly alcohol and highly processed stevia leaf extract.  Thus, each is false and misleading in the same way.

  

  

16.    Defendant makes the same misrepresentations on its website. For example, on its website, Defendant sells its 100% natural and organic Vanilla Bean Lip Balm. Directly above the yellow "Add to Cart" button, a description of the Product reads, "Warm, comforting, and made with ***100% natural*** and organic ingredients for lips that feel good and stay smooth." (emphasis added) [1]:

## Vanilla Bean
Lip Balm
$3.69

⭐⭐⭐⭐⯨ 4.4 (140)

🟢 🔴 ⚪ 🟢

Vanilla Bean tastes like smooth, rich, and creamy vanilla. Warm, comforting, and made with 100% natural and organic ingredients for lips that feel good and stay smooth.

**add to cart**

17.    Lower on the page, under the "Benefits" tab, Defendant doubles down on the entirely natural representation:

BENEGITS ⌃

USDA Certified Organic


100% natural

All-day moisture

Made with sustainably sourced ingredients

Dermatologist recommended

Made for sensitive skin

---

[1] eos, *100% Natural & Organic Lip Balm Variety Pack*, available at https://evolutionofsmooth.com/products/organic-lip-balm-4-pack?_pos=1&_sid=5ae06992b&_ss=r&variant=22905345015866

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    6

18.    However, buried under the "Ingredients" tab, Defendant discloses the Product is made with stevia leaf extract and anisyl alcohol:

**Full Ingredient List:**
Helianthus Annuus (Sunflower) Seed Oil\*, Beeswax/Cera Alba (Cire d'abeille)\*, Cocos Nucifera (Coconut) Oil\*, Butyrospermum Parkii (Shea) Butter\*, Simmondsia Chinensis (Jojoba) Seed Oil\*, Flavor (Aroma), Copernicia Cerifera (Carnauba) Wax/Cire de carnauba\*, Olea Europaea (Olive) Fruit Oil\*, Vanilla Planifolia Fruit Extract \*, Tocopherol, Stevia Rebaudiana Leaf/Stem Extract\*, Beta-Sitosterol, Squalene, Anisyl Alcohol1. \*Organic – 1 Component of Flavor.

19.    Each of Defendant's "100% Natural" and "100% Natural & Organic" products are sold with substantially similar false and misleading marketing.  Discovery will reveal the entire swath of violative Products.

20.    Any reasonable consumer would expect a product branded as "100% Natural" to mean the Product is not made with, and does not contain, any artificial or synthetically made ingredients.

21.    Stevia leaf extract and anisyl alcohol are present ingredients in the "100% Natural" lip balm Products.  Defendant was aware of the synthetic, and unnatural nature of these ingredients but nonetheless chose to represent to reasonable consumers that the Products at issue were comprised of 100% natural ingredients.

**II.    DEFENDANT'S PRODUCTS ARE MISLABELED DUE TO THE INCLUSION OF STEVIA LEAF EXTRACT AND ANISYL ALCOHOL**

**A.    Stevia Leaf Extract Production**

22.    While stevia leaf extract can be derived from natural sources, stevia leaf extract in consumer goods is highly processed into an alcohol syrup to be useable on a mass scale.  The extraction process is what creates the sweetness.

23.    The first step in creating stevia leaf extract starts with steeping the leaves in boiling water and mixing them in an industrial trough.  The water extract is then filtered into a holding tank while the remaining leaves are discharged from the trough and sent to a solid waste management facility as seen in the image below:



24.    Next, the water extract is then clarified by electrocoagulation.  The electrocoagulation separates additional contaminants before they are filtered through an industrial filter press.



25.    The filtered water extract goes through three steps of additional clarification.  First, the filtered water extract goes through an activated carbon filter, then through a cation exchange

column, and then through an anion exchange column before it is clarified water extract. The process is depicted below:



26. The clarified water extract is then sent through a special macro-porous non-ionic resin column. Steviol glycoside is absorbed into the resin column until saturated. The extra water extract devoid of steviol glycoside is discarded. Next, pure ethanol is poured through the steviol glycoside saturated resin column. An alcoholic solution of steviol glycoside results from the process depicted below:



27.    The alcoholic solution of steviol glycoside is further concentrated through a nanofiltration membrane device.



28.    The concentrated alcoholic solution of steviol glycosides is concentrated further down into an alcoholic TSG syrup, depicted below:



29.     The alcoholic TSG syrup is decolorized through an activated carbon filter and heated up in the process depicted below:



30.     Finally, the hot TSG syrup is spray dried through a machine resulting in stevia leaf extract:





Step – 11:  Spray drying

Hot alcoholic TSG Syrup

90% pure TSG

Hot Air

31.     By the time the stevia leaf extract is ready to be added to Defendant's Products, it is a highly processed alcohol syrup.  This is no longer a natural ingredient.

**B.     Anisyl Alcohol Production**

32.     Anisyl alcohol is a fragrance chemical used to provide a sweet, flowery scent that is similarly created from a heavily manufactured process.

33.     First, anisaldehyde, the base reactant, is created from oxidizing para-cresyl methyl using industrial manganese dioxide and sulfuric acid inside large reaction vessels.

34.     The resulting crude anisaldehyde is pulled out of the reaction mixture using toluene, a petroleum solvent, then washed with water to strip out unwanted acids before the toluene is separated off.  At this stage the product has already passed through methylation, oxidation, and solvent extraction.

35.     Next, the manufacturer runs the chemical conversion known as reduction by placing the anisaldehyde in a pressurized reactor with a Raney nickel catalyst and dissolved in ethanol, and hydrogen gas is forced into the vessel under pressure for many hours while the temperature is carefully raised and held.  This reduction can also be carried out using chemical reducing agents such as sodium borohydride. The hydrogen (or reducing agent) chemically transforms the

anisaldehyde into anisyl alcohol.

36.    After the reaction, the crude liquid anisyl alcohol is drained from the reactor and purified by distillation under reduced pressure to reach the high purity level (typically 98% or greater) demanded for commercial use.

37.    By the time anisyl alcohol is added to Defendant's Products, it is the output of a chain of industrial chemical reactions — methylation, oxidation, solvent extraction, catalytic reduction under hydrogen pressure, and distillation. It is a synthesized, highly processed chemical.

## III.    CONSUMERS' NATURAL INGREDIENT PREFERENCES

38.    "As consumers grow increasingly aware and concerned about [e]nvironmental, [s]ocial and [g]overnance … issues and personal wellness, they are demanding greater transparency in the products they purchase.  They want to know where their products are produced and what ingredients they include, so that they can choose products that are good for both them and the environment.  As a result, more and more brands are touting products as 'natural,' and consumers are increasingly willing to pay a premium for them.  From food, to personal care products … to cosmetics and fragrances, … products are being advertised as 'natural,' 'all natural,' '100% natural,' 'naturally-derived' or 'derived from natural sources.'"[2]

39.    "When you see [100% Natural Ingredients] on a product, it signifies that all the components used to create it are derived from nature.  These ingredients have not been altered or synthesized in a laboratory, nor have they been infused with artificial additives or preservatives. They are as close to their original state as possible."[3]  In fact, natural ingredient trends reveal that naturalness matters to about one in five consumers in the United States.  The "Natural" claim can be linked to additional "clean-living" features such as no additives or preservatives and clean formulations.[4]

---

[2] DEBEVOISE & PLIMPTON, *The Nature of "Natural" Advertising Claims*, available 20210721-the-nature-of-natural-advertising-claims.pdf.

[3] LAUMIERE GORMET FRUITS, *Decoding 100% Natural Ingredients" A Quick Insight,* available https://laumieregourmet.com/blogs/news/decoding-100-natural-ingredients-a-quick-insight

[4] INNOVA MARKET INSIGHTS, *Natural ingredient Trends in the U.S.*, available https://www.innovamarketinsights.com/trends/natural-ingredient-trends-in-the-us/.

---

40.    Knowing this, producers, like Defendant, aim to capitalize on market preferences by labeling its Products as containing "100% Natural" ingredients.  Unfortunately for consumers, Defendant's marketing and labeling practices are precisely what consumers are seeking to avoid: 100% natural ingredient representations made clearly and conspicuously on the front and back labels while inconspicuously disclosing contradictory ingredient information on the ingredient panel of the packaging.  But this is misleading, unfair, and unlawful.

41.    The Federal Trade Commission would agree.  "If companies market their products as 'all natural' or '100% natural,' consumers have a right to take them at their word."[5]

42.    Accordingly, reasonable consumers would not know, nor are expected to know, that stevia extract and anisyl alcohol are not natural, but rather synthetic and manufactured.

43.    Although Defendant is best situated to know the true composition of its Products, to the extent necessary, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

(a)    **WHO:** Defendant eos Products, LLC.

(b)    **WHAT:** Defendant's conduct here was, and continues to be, fraudulent because it represented the Products as being 100% Natural on the front labels when the back packaging reveals that the Products are made with stevia leaf extract—a non-natural synthetic added to the Products—as well as anisyl alcohol—a manufactured synthetic chemical.  These false and misleading representations were material to Plaintiff and the Classes because they would not have paid the same amount for the Products or would not have purchased the Products at all had they known the Products contained synthetic, artificial, or otherwise unnatural ingredients and so was not comprised of 100% natural ingredients.  Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions, given its expertise and offering of products, as described above, yet it continued to pervasively market the Products in this manner in California and the United States.

(c)    **WHEN:** Defendant made material misrepresentations and omissions to Plaintiff and the members of the Classes during the punitive class period, including prior to and at the time of purchase, despite its knowledge that the Products did not, in fact, contain exclusively 100% natural ingredients. Plaintiff and Class Members viewed the packaging of the Product when

[5] Federal Trade Commission, *Are Your "All Natural" Claims All Accurate?*, available https://www.ftc.gov/business-guidance/blog/2016/04/are-your-all-natural-claims-all-accurate.

purchasing and viewed the representations and warranties made by Defendant and understood them to mean that the Products did not contain any artificial or synthetic ingredients that does not fit in the 100% natural claims.

(d) **WHERE:** Defendant's made material misrepresentations and omissions on the Products' labels and packaging and marketing materials.

(e) **HOW:** Defendant made material misrepresentations and omissions of fact regarding the Products by representing and warranting that the Products were comprised of 100% natural ingredients.  Defendant, on its labeling, omitted material disclosures to consumers about the true contents of the Products.

(f) **INJURY:** Plaintiff and members of the Classes purchased, and paid a premium (up to the full purchase price), or otherwise paid more for the Products than they would have, or alternatively would not have purchased the Products at all, absent Defendant's misrepresentations and omissions.

## CLASS ALLEGATIONS

44.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23, defined as:

*Nationwide Class:*  All persons in the United States, who, during the maximum period of time permitted by law, purchased Defendant's Products (the "Nationwide Class").

*California Subclass:*  All persons in California who, during the maximum period of time permitted by the law, purchased Defendant's Products (the "California Subclass", together with the Nationwide Class, "the Classes").

45.    The Classes do not include (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

46.    Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

47.    *Community of Interest:*  There is a well-defined community of interest among Members of the Classes, and the disposition of the claims of these Members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

48.    *Numerosity*:  While the exact number of members of the Classes is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    15

belief, members of the Classes number in the millions.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

49.    ***Existence and Predominance of Common Questions of Law and Fact***:  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes.  These common legal and factual questions include, but are not limited to:

(a)    Whether the Products are comprised of 100% natural ingredients;

(b)    Whether the stevia leaf extract is synthetic or otherwise unnatural;

(c)    Whether the version added to Defendant's Product is considered synethetic or otherwise unnatural;

(d)    Whether the anisyl alcohol is synthetic or otherwise unnatural;

(e)    Whether the version added to Defendant's Product us considered synthetic or otherwise unnatural;

(f)    Whether a reasonable consumer would be deceived by Defendant's representations;

(g)    Whether Defendant was unjustly enriched as a result of its unlawful conduct as alleged in this Complaint;

(h)    Whether Defendant violated California's Consumer Legal Remedies Act,("CLRA"), Cal. Civ. Code §§ 1750, *et seq.;*

(i)    Whether Defendant violated California's False Advertising Law ("FAL") Cal. Bus. & Prof. Code § 17500, *et seq.;* and

(j)    Whether Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

50.    ***Typicality:***  The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading advertising about the 100% natural ingredients composition of its Products, purchased the misleadingly labeled Products in reliance on those representations and warranties, and suffered

a loss as a result of those producers.

51.    *Adequacy:*  Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Fed. R. Civ. P. 23(a)(4).  Plaintiff is an adequate representative of the Classes because she has no interests adverse to the interests of the Members of the Classes. Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

52.    *Superiority:*  A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress of their claims other than through the procedure of a class action.  In addition, even if Class Members could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Members of the Classes.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class-wide relief is essential to compel compliance with California's consumer protection laws.  If separate actions were bought by individual members of the Classes, Defendant could be subject to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumer's Legal Remedies Act ("CLRA"),
Cal. Civ. Code § 1750, *et seq*.
(On Behalf of Plaintiff and the California Subclass)**

53.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

54.    Plaintiff brings this claim individually and on behalf of the California Subclass

against Defendant.

55.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

56.     Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

57.     Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

58.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers by advertising that the Products contained exclusively 100% natural ingredients even though the Products contain synthetic and unnatural stevia leaf extract and anisyl alcohol.

59.     Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

60.     On May 4, 2026, prior to filing this action, Defendant received a pre-suit notice letter pursuant to CLRA § 1782.  The letter was sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demands that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged herein.  Defendant failed to remedy the issues raised in the letter.

61.     Plaintiff and the California Subclass seek (1) actual and punitive damages, (2) restitution, (3) reasonable costs and attorneys' fees, and (4) to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of the Plaintiff and the California Subclass)**

62.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

63.    Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

64.    Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

65.    Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased the Product for her personal use.  In so doing, Plaintiff relied upon Defendant's false representations that the Product was comprised of exclusively "100% Natural Ingredients" when the Product actually contained synthetic and otherwise unnatural ingredients. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

66.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200.  A business act or practice is "unlawful" if it violates any established state or federal law.  A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

67.    Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                        19

68.     Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.* and CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.

69.     Defendant has also violated the UCL's proscription against engaging in Unfair Business Practices.  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, et seq. in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Defendant's deceptive "100% Natural" representations have misled consumers into purchasing the Products over other truthfully labeled competitors.

70.     Plaintiff and the California Subclass suffered substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the inclusion of ascorbic acid, a synthetic preservative.

71.     There is no benefit to consumers or competition from deceptively marketing that the Products are comprised of 100% natural ingredients when it is not.

72.     The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

73.     Plaintiff and the California Subclass could not have reasonably avoided their injury or known that the Products' prominent, front-label marketing was in fact inaccurate and contradicted by Defendant's back-label, fine-print disclosures.  As such, they could not have reasonably avoided the injury they suffered.

74.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to (a) provide restitution to

Plaintiff and the other members of the Subclass; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's attorneys' fees and costs.

## COUNT III
### Violation of California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500
### (On Behalf of Plaintiff and the California Subclass)

75.    Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

76.    Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

77.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Plaintiff, members of the California Subclass, and the public.  As described throughout this Complaint, Defendant misrepresents that the Products are comprised of 100% natural ingredients and thus free of synthetic, artificial, or otherwise unnatural ingredients when it contains stevia leaf extract and anisyl alcohol, both being synthetic and otherwise unnatural ingredients.

78.    By Defendant's actions, it has disseminated uniform advertising regarding the Products across California and the U.S.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, et seq.  Such advertisements were intended to and likely did deceive the consuming public.

79.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant affirmatively represented that the Products are comprised of 100% natural ingredients when it contains stevia leaf extract and anisyl alcohol, both being synthetic and otherwise unnatural ingredients.

80.    In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue and misleading in violation of California law.  Plaintiff and the members of the California Subclass based their purchasing decisions on Defendant's material false and misleading representations and warranties about the composition of its Products.  Plaintiff and the California Subclass were injured in fact and lost money and property as a result, in an amount to be proven at trial.

81.    The misrepresentations by Defendant of the material facts described and detailed above herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

82.    Accordingly, Plaintiff and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under Cal. Code Civ. Proc. §1021.5; and (d) injunctive relief, and other appropriate equitable relief.

## COUNT IV
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Nationwide Class)

83.    Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

84.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

85.    Plaintiff brings this claim under the laws of the State of California.

86.    Plaintiff and the Nationwide Class Members formed a contract with Defendant at the time Plaintiff and the Nationwide Class Members purchased the Products.

87.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging that it was comprised of 100% natural ingredients.

88.    This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff and the Nationwide Class and Defendant.

89.    As set forth above, Defendant purports through its labeling, marketing, and packaging, to create an express warranty that the Products are comprised of 100% natural ingredients, implying to consumers that the Products are therefore free of synthetic, unnatural ingredients.  However, Defendant breached its express warranties about the Products by including stevia leaf extract and anisyl alcohol, synthetic and otherwise unnatural ingredients, thereby rendering the prominent "100% Natural Ingredients" representation false and misleading.  Simply, the Products do not conform to Defendant's representations and warranties.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                    22

90.     Plaintiff and the Nationwide Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

91.     Plaintiff and the members of the Nationwide Class would not have purchased the Products had they known the true nature of them.

92.     As a result, Defendant's breach of express warranty, Plaintiff and each member of the Nationwide Class suffered financial damage and injury as a result and are entitled to damages, in addition to costs, interests and fees, and attorneys' fees, as allowed by law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a)     For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b)     For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c)     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e)     For prejudgment interest on all amounts awarded;

f)     For an order of restitution and all other forms of equitable monetary relief;

g)     For injunctive relief as pleaded or as the Court may deem proper;

h)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.


Dated: June 9, 2026                    Respectfully submitted,

                                       **BURSOR & FISHER, P.A**.

                                       By:   _/s/ L. Timothy Fisher_
                                             L. Timothy Fisher

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    23

L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
       jglatt@bursor.com

*Attorneys for Plaintiff*

## CLRA VENUE DECLARATION

I, L. Timothy Fisher, declares as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff. Plaintiff alleges that she resides in San Francisco, California. I have personal knowledge of the facts set forth in this declaration and as called as a witness, I could and would completely testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District, as Plaintiff alleges that she purchased the Products in this District. Additionally, Defendant allegedly advertised, marketed, manufactured, distributed, and/or sold the Products at issue to Class Members from this District.

3. I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this 9th of June, 2026.

*/s/ L. Timothy Fisher*
L. Timothy Fisher
